JOEL WHEELER et al., Appellants, *v.* WILLIAM W. LAWSON, Respondent.

Where, in an action of trespass for the unlawful taking and conversion of personal property, it appears that, at the time of the taking complained of, plaintiff was in actual possession thereof, it is no defense to show title in a third person, defendant must connect himself in some way with the owner.

In such an action it appeared that S., the former owner of the property, executed a chattel mortgage thereon to plaintiff's assignor. S subsequently made a general assignment for the benefit of creditors. The assignee with the consent of S. surrendered the property to the mortgagee, from whose possession it was forcibly taken by defendant, who, as sheriff, had in his hands an execution against S., issued upon a judgment rendered after the property came into the plaintiff's possession. *Held*, that the invalidity of the chattel mortgage did not justify the taking, as in such case the title was in the assignee of S., and proof of possession in plaintiff was sufficient to sustain the action.

(Submitted April 16, 1886; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme

Court, in the fifth judicial department, entered upon an order made October 31, 1884, which affirmed a judgment in favor of defendant, entered upon the report of a referee.

This was an action in trespass to recover damages for the unlawful and forcible taking by the defendant from the plaintiffs' possession and the conversion to his use, of certain horses and other personal property belonging to them.

The complaint contains the usual allegations in such cases, and the defendant, after a general denial, set up by answer that at the time mentioned in the complaint, he was sheriff of Erie county, and in that character did the acts complained of by virtue of certain executions against one Shoemaker; that the property taken by him was not the property of the plaintiffs, but belonged either to the execution debtor, or to one Allen as his assignee, and who, the defendant alleged, resides in this State and is a necessary party to the action; he also alleged a lien for $91, in favor of Allen as such assignee, for the care, etc., of the property, and its payment by defendant. Some other matters are set out, but they are not material upon this appeal. The record does not contain the evidence, but from the report of the referee, it appears that the following facts were found by him: On the 1st day of January, 1880, said Shoemaker resided in the city of Buffalo, and was engaged in the manufacture and sale of ale and porter. At the same time one Marvin Cline, of the same city, was engaged in the manufacture and sale of malt. Shoemaker was indebted to Cline in a large sum of money upon certain promissory notes made by Shoemaker, and payable to the order of Cline, and he then, in consideration of said indebtedness, executed to Cline an instrument in writing, wherein he transferred and sold to him certain "goods, chattels, wares and merchandise," and among other things, the property described in the complaint, upon the condition as expressed in said instrument: "that if the party of the first shall pay, take up and discharge the said promissory notes at the maturity thereof, and if he shall pay any other promissory note or notes, which shall be

indorsed by the said Marvin Cline at his request and for his accommodation * * * then and in that event this instrument shall become null and void, and of no effect whatever." At the time of its execution and delivery, it was agreed by said Cline, and understood by said Shoemaker, that it would not be filed until Cline should notify him, and that Shoemaker should continue to carry on his business the same as before, which he did until the assignment hereinafter mentioned, and Cline did not take possession of the property, but the same continued in the possession of Shoemaker up to about the 20th day of July, 1880, when he executed a general assignment to one Allen, for the benefit of his creditors, except so far as said property was changed by Shoemaker in the conduct of his business. Within a day or two after the delivery of this instrument to Cline, he delivered it to the plaintiffs, "to secure paper of said Shoemaker which then was or might be in existence," and, on the 11th of June thereafter, executed to them in writing an absolute assignment of all his interest in said bill of sale, and it remained in their possession. Said instrument and assignment were filed on the 25th day of June, 1880, in the office of the clerk of Erie county. After said instrument was delivered to Cline, he furnished moneys and supplied malt to said Shoemaker, to be used by said Shoemaker in his business, and said Shoemaker gave to said Cline therefor certain promissory notes. Each of the notes were made by said Shoemaker payable to the order of said Cline. Cline indorsed and delivered all of them to the plaintiffs herein, in the usual course of business and for a valuable consideration, and they now hold the same. On the 20th day of July, 1880, the plaintiffs went to the place of business of Shoemaker, in the city of Buffalo, and there found Shoemaker and Allen, his assignee, and demanded and took possession of the property described in the complaint herein, under and by virtue of the said instrument, with the permission of Shoemaker and Allen, and without objection on the part of either of them, and the plaintiffs thereupon caused said property to be advertised for sale, under and by virtue of said instrument. After the making and delivery of said instru-

ment, and before the written assignment thereof was made by Cline to plaintiffs, Shoemaker made or indorsed to the Third National Bank of Buffalo certain promissory notes. These same were not paid when they became due, and judgments were duly recovered thereon by said bank against Shoemaker and others, and executions were duly issued against the property of the judgment debtors to the defendant as sheriff of the county of Erie. The judgments were not recovered until after the plaintiffs had taken possession of the property described in the complaint. Defendant, under and by virtue of said execution, thereafter levied upon and took possession of and sold the property described in the complaint, which was then of the value of $6,043.75.

As conclusions of law the referee found :

*First.* That said instrument executed by Shoemaker was void as against the Third National Bank of Buffalo and as against creditors of and purchasers in good faith from said Shoemaker.

*Second.* That the plaintiffs cannot maintain the action, and the defendant is entitled to judgment dismissing the complaint.

*Spencer Clinton* for appellants. Possession by the plaintiffs was sufficient to enable them to maintain the action, the defendant being a wrong-doer. (*Stowell* v. *Otis,* 71 N. Y. 36 ; *Hendricks* v. *Decker,* 35 Barb. 298 ; *Southard* v. *Brenner,* 72 N. Y. 424, 427 ; *Brackett* v. *Harvey,* 25 Hun, 502 ; *Mc Queen* v. *Babcock,* 41 Barb. 340 ; *Spring* v. *Short,* 90 N. Y. 558.) The bank not having made its lien specific by judgment and execution prior to the filing of the mortgage, cannot attack its validity on the ground that it was not filed. (2 R. S, 70, § 5 ; *Fraisbee* v. *Thayer,* 25 Wend. 396–8 ; *Van Heusen* v. *Radcliff,* 17 N. Y. 580, 584 ; *Collin Case,* 12 Blatchf. 548 ; 77 id. 628 ; *Lane* v. *Kutz,* 1 Keyes, 203, 214 ; *Kennedy* v. *Nat. Un. Bk.,* 23 Hun, 494, 496 ; *Hicks* v. *Williams,* 17 Barb. 523 ; *Hale* v. *Sweet,* 40 N. Y. 97.) The clause in the mortgage covering stock in trade did not vitiate it. (*Chatham Nat. Bank* v. *O'Brien,* 6 Hun, 231 ; *Brackett* v. *Harvey,* 91 N. Y. 214, 224.)

*Adelbert Moot* for respondent.    The bill of sale, not having been followed by an immediate change of possession in the mortgagor, is fraudulent.  (2 Kent's Com. [12th ed.] 527; *Twyne's Case,* 1 Smith's L. Cas. 1, note (*a*) 592; note to same, 71; *Peiser* v. *Peticolas,* 507 Ex. 32 Am. Rep. 621; *Sturtevant* v. *Ballard,* 9 Johns. 337; *Doane* v. *Eddy,* 16 Wend. 523; *Randall* v. *Cook,* 17 id. 53; *Griswold* v. *Sheldon,* 4 N. Y. 597; *Chapin* v. *Shaffer,* 49 id. 407; 20 Alb. L. J. 506.)  The failure to file the bill of sale (which was in reality a mortgage, having been given for security merely, and not for the purpose of transferring title, and therefore all the rules applicable thereto, being applicable to it), made it "absolutely void" as to all persons who became creditors (by contract or otherwise) of Shoemaker, while it was not on file.  (3 R. S. [7th ed.] 2249; Thomas on Mort. 495; Laws of 1883, chap. 279, § 2; *Otis* v. *Sill,* 8 Barb. 102; *Clark* v. *Gilbert,* 14 Weekly Dig. 314; *Wood* v. *Lowery,* 17 Wend. 492; *Smith* v. *Acker,* 23 id. 653; *Benedict* v. *Smith,* 10 Paige, 126; *Powers* v. *Freeman,* 2 Lans. 127; *Hathway* v. *Howell,* 54 N. Y. 97; *Steele* v. *Benham,* 84 id. 634.)  The mortgage is void, because of the agreement that the mortgagor, or vendor, could continue to use the property as his own. (*Potts* v. *Hart,* 99 N. Y. 168; *Smith* v. *Cooper,* 27 Hun, 565; *Gardner* v. *McEwen,* 19 N. Y. 123; *Southard* v. *Benner,* 72 id. 429; *Edgell* v. *Hart,* 9 id. 213; *Brackett* v. *Harvey,* 91 id. 214; *Delaware* v. *Ensign,* 21 Barb. 85; Thomas on Mort., 482; *Haven* v. *Jones,* 7 Daly, 375; Jones on Chat. Mort., § 401; *Russell* v. *Winne,* 37 N. Y. 591; *Doane* v. *Eddy,* 16 Wend. 523; *Randall* v. *Cook,* 17 id. 53.)  When defendant seized the property and sold it upon the judgment and execution, based upon claims of a creditor which were intermediate the giving of this void mortgage and the plaintiff's possession obtained under it, he did a lawful act and his defense is complete. (*Thompson* v. *Van Vechten,* 27 N. Y. 568, 582; *Reichey* v. *Stryker,* 26 How. Pr. 75; 28 N. Y. 45; *Frost* v. *Mott,* 34 id. 253; *Parshall* v. *Eggart,* 54 id. 52; *Dutcher* v. *Smartwood,* 15 Hun, 31; Thomas on Mort., § 345.)  The fact that plaintiffs obtained

possession under and by virtue of their void mortgage, one day before defendant's levy on execution, does not give them a cause of action. (Jones on Chat. Mort., § 245 ; *Stuart* v. *Beale,* 7 Hun, 405 ; 68 N. Y. 629 ; *Dutcher* v. *Smartwood,* 15 Hun, 31, 33 ; *Thompson* v. *Van Vechten,* 27 N. Y. 581 ; *Frost* v. *Warren,* 42 id. 204 ; *Crouse* v. *Frothingham,* 97 id. 105 ; *Dewey* v. *Moyer,* 72 id. 70 ; *Wagner* v. *Jones,* 7 Daly, 355 ; affirmed, 77 N. Y. 590.) The plaintiffs stand in no better position than Cline would with reference to their title and chattel mortgage, from having taken the mortgage to secure Shoemaker's notes, received in the ordinary course of business by indorsement by Cline, before maturity and Cline's indorsements. (*Wagner* v. *Jones,* 7 Daly, 355 ; 77 N. Y. 590 ; 3 R. S. 7th ed.] 2249 ; Laws of 1833, chap. 229, § 1 ; *Hern* v. *Nichols,* 1 Salk. 289 ; *Carpenter* v. *Longon,* 16 Wall. 273.)

DANFORTH, J. Upon these facts this appeal should succeed. The plaintiffs were in actual possession of the property when the defendant, against their will, forcibly seized, removed and sold it. This was enough without any other evidence of title to maintain the action (*Stowell* v. *Otis,* 71 N. Y. 36), except against the true owner, or one connecting himself in some way with the true owner. The general denial does not avail the defendant, for justification is not admissible under it. The only defense is in the affirmative answer, which sets up that the property seized belonged to Shoemaker, or Levi Allen as his assignee. So far as this answer merely shows title out of the plaintiffs, it is of no consequence. If the title was in fact in Allen, the defendant does not connect himself with it. He must, therefore, rely on showing title in Shoemaker, against whose property only he has execution. This he does not do. On the contrary the answer asserts that Allen, as assignee of the goods, etc., of Shoemaker, is a necessary party to the action, but no steps appear to have been taken to bring him in, in accordance with this averment. The referee in substance finds that on the 20th of July, 1880, and before the judgment against him was obtained, Shoemaker executed

a general assignment of all his property, including that in question, to Allen for the benefit of his creditors, and by necessary implication also finds that on that day he delivered possession of it to his assignee, for he says Shoemaker continued in possession until he executed the assignment. The assignee is not a party to the suit, and the defendant's justification fails because he shows that the title is in Allen, against whom he has no claim. It is conceded that if the judgment creditor were seeking to secure the avails of the mortgaged property by proceedings in the nature of a creditor's bill, and did not attack the assignment as well as the mortgage, then it would not be entitled to relief, because a judgment setting aside the incumbrance by mortgage would not afford the bank any relief, as the property or the avails of it would belong to the assignee, and so it was held by us in *Spring* v. *Short* (90 N. Y. 538). The form of the action is immaterial where the same facts appear. Here they do. The respondent argues that showing title in Allen will not enable the plaintiffs to sustain the action without that title has been transferred to them. Doubtless that is so. They did not need to show it. Possession was enough, *prima facie*, to sustain the action, but it does appear, however, that possession was taken by Allen's permission. Besides, as the goods when seized by the defendant were in the actual possession of the plaintiffs, the burden was upon the defendant either to prove title in Shoemaker, or to connect himself with Allen's title, and show that the taking was by his authority, or by virtue of process or right acquired through legal proceedings against him. (*Merritt* v. *Lyon*, 3 Barb. 110; *Demick* v. *Chapman*, 11 Johns. 132; *Hurd* v. *West*, 7 Cow. 752.) Neither of these things were accomplished. No invalidity is found as to the assignment, nor any unwillingness on the part of the assignee to perform his duty under it. He stands, not a mere representative of the debtor, but of the rights of creditors, and may impeach the assignor's conveyances, although the debtor could not do so. (Laws of 1858, chap. 314.) So also as the title to the property passed to Allen by the assignment, he could doubtless, as the

defendant's counsel says, maintain his action in trover. He could do so because he was the general owner. But so also could the plaintiffs, because their possession was, upon the findings of the referee, by the permission of the assignee. They had thus a special property, or interest in the articles, and a recovery by either would be a bar to an action by the other. But it is enough to defeat the justification set up in this action that at the time the defendant levied, the judgment and execution debtor had no right or interest in the property, it having passed from him by the prior assignment to Allen; and as this was before judgment, so of course it was before execution issued, and the goods were neither actually nor constructively bound by it. (2 R. S. 365, § 13; Code, § 1405.) It is, therefore, unnecessary to consider other questions raised by the appellants, or anticipate how they may stand upon another trial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except FINCH, J., dissenting; ANDREWS, J., not voting, and MILLER, J., absent.

Judgment reversed.