" BERTHA ZUNDER ", Petitioner, v. " SAUL ZUNDER ", Respondent■

Domestic Relations Court of the City of New York, Family Court Division, Bronx County, June 4, 1946.

**558**

*Irving I. Erdheim* for petitioner.

*Mendel Zucker* for respondent.

SICHER, J.  A situation analogous to the present controversy was considered in "*Kenneson*" v. "*Kenneson*" (178 Misc. 832).  That too was a case in which a wife had filed petition for a support order of this court immediately upon failure of her Supreme Court action for a legal separation, and had made no recanting offer of reconciliation after dismissal of such separation action complaint nor at the hearings in this court tendered evidence of other intervening change of circumstances.  The principles discussed and the authorities analyzed in "*Kenneson*" v. "*Kenneson*" (*supra*) are therefore controllingly applicable to the petitioner wife herein.

However, the instant proceeding involves the additional problem of the needs and rights of a child dependent; " *Kenneson.* " v. " *Kenneson* " (*supra*) dealt with a wife only.

The parties were duly married on August 25, 1939, and are the parents of one child (" Harold "), born October 31, 1940. The three resided as a family unit in a Bronx County apartment until October 25, 1943, when petitioner abruptly moved out, took with her the child and all the household furniture, and shortly afterwards instituted in the Supreme Court of the State of New York an action for separation, predicated solely on alleged failure of support between October 11 and October 25, 1943.

Respondent served in the United States Army from March 23, 1944, until December 22, 1945. So, the separation action was not tried until March 18, 1946, when Justice McGEEHAN dismissed the complaint at the close of the whole case and commented, in response to plaintiff's counsel's query whether the court found that the husband did support the wife: " THE COURT: I am impelled to arrive at this conclusion. This is probably the most unique separation case that ever came before me in all the years I have been on the bench in that a husband, because for two weeks he failed to support his wife — which I don't find because from the sale of the machine she got $60.— her debts are her husband's debts — she didn't have to go and dispose of that $60; she could have kept it and maintained herself on the $60 — and in addition to that she takes, every stick of furniture he possesses and removes the furniture and deprives him of a home — now I don't want to get any more in it or widen the breach between these people."

There was also an express finding that the wife had abandoned the husband. However, the latter's counterclaim for affirmative relief was not pressed, and the judgment entered April 2, 1946, merely dismisses the wife's complaint on the merits. Consequently, this support proceeding is not governed by *Matter of Chandler* v. *Chandler* (241 App. Div. 390) nor such Family Court decisions as *Gilgun* v. *Gilgun* (N. Y. L. J., May 2, 1935, p. 2249, col. 3), *Cosgrove* v. *Cosgrove* (23 N. Y. S. 2d 586), and *Anonymous* v. *Anonymous* (20 N. Y. S. 2d 514), because in each of those four cases the respondent was a husband who had previously been granted an affirmative judgment of separation in his favor. (Cf. *Litt* v. *Litt,* 234 App. Div. 870, motion for leave to appeal to the Court of Appeals denied, 235 App. Div. 631; *O'Leary* v. *O'Leary,* 256 App. Div. 130; *Harlow* v. *Harlow,* 123 Misc. 53.)

Nevertheless, for purposes of today's order it is immaterial that the above-described April 2, 1946, Supreme Court judgment, since it merely dismissed her complaint, privileged petitioner to recant, so that if a timely and bona fide offer to resume marital relations were made by her and unjustifiably rejected or ignored, a new cause of action for separation or support according to the husband's means might arise in her favor. (See *Silberstein* v. *Silberstein*, 218 N. Y. 525; *Mirizio* v. *Mirizio*, 248 N. Y. 175; *Bohmert* v. *Bohmert*, 241 N. Y. 446; *O'Leary* v. *O'Leary*, 256 App. Div. 130, *supra*; *Harlow* v. *Harlow*, 123 Misc. 53, *supra*; and *Brauch* v. *Brauch*, 142 Misc. 464.) For, at the preliminary April 4, 1946, hearing and also at the April 15, 1946, final hearing in this court *both* parties expressed unwillingness to re-establish a home or again live together. Thus, like " *Kenneson* " v. " *Kenneson* " (178 Misc. 832, *supra*), this is a case of a wife who petitions the Family Court to grant in effect separate maintenance support recently denied to her by the Supreme Court but who adduces not a single new fact occurring since the Supreme Court determination against her. Under such circumstances, to grant petitioner's prayer for her own support according to respondent's means would violate *res judicata* and orderly procedure. The conclusion is therefore inescapable that this court is without power to make at this time any order for support of the petitioner wife except on a " public charge " basis; that is, respondent's present duty in respect of the petitioner wife personally is solely the residual minimum obligation of indemnifying the community against the burden of her support. (Cf. " *Kenneson* " v. " *Kenneson* ", 178 Misc. 832, 836–841, *supra; " Salvatore " v. " Salvatore* ", 185 Misc. 309; and N. Y. City Dom. Rel. Ct. Act, § 137, subd. 4.)

And the evidence would not justify a finding that the petitioner wife now is, or likely to become, to any extent a " public charge ".

Shortly after unjustifiably leaving respondent, with the furniture she took along petitioner set up, and still maintains, a joint household for her mother, herself and the child " Harold ". It is unclear, but inconsequential, whether the petitioner or her mother is the tenant; in either event the latter, who is employed outside the home, shares the cost of maintaining the apartment and has the use of that furniture and of her daughter's housekeeping services. Petitioner has contributed also some cash out of the separation action *pendente lite* alimony collections and the substituted servicemen's dependents' allowance during

respondent's army service. She may have carried an additional proportion of the entire household expenses out of personal earnings before August, 1945, when she ceased gainful employment, having since devoted all her time to the care of the child and the household. Accordingly, as today's order for the child member of that joint household is slightly more than the equivalent of those alimony and servicemen's dependents' allowance payments, the total financial situation continues substantially the same as it has been since August, 1945.

True, the statutory obligation of a parent to support an adult daughter is secondary to the primary obligation of the latter's husband; and, although invocable by the Department of Welfare of the City of New York, it may not be urged by him in self-exoneration (see " Lorenzo " v. " Lorenzo ", 183 Misc. 46, 49). But that principle is inapplicable to the instant case, which is not one of a parent's supplying shelter and other requirements to a deserted, and otherwise destitute, married daughter, but is rather the case of a parent's deriving personal advantage from joint household arrangements with a daughter who has abandoned her husband.

Nevertheless, regardless of the wife's fault and the absence of any right to or occasion for an order for herself, the child " Harold " is concededly entitled to support according to respondent's means; that is, in an amount measured by the child's needs in relation to the father's ability to provide and station in life (see " Johnston " v. " Johnston ", 177 Misc. 618, 623; Prindle v. Dearborn, 161 Misc. 95, 99; Schacht v. Schacht, 187 Misc. 461; cf. Garlock v. Garlock, 279 N. Y. 337, 340). That obligation was expressly recognized by Supreme Court Justice McGEEHAN in not exercising the discretionary power to include in the judgment dismissing the separation action complaint directions for the care, education and maintenance of " Harold " under section 1170-a of the Civil Practice Act, but, instead, relegating the parties to the Family Court in default of a mutually satisfactory agreement between them.

Therefore, the sole issue on that phase is the " fair and reasonable sum " respondent may be required to pay petitioner in " Harold's " behalf in compliance with that established common-law doctrine of a father's duty to support his minor child and the statutory provisions, declaratory thereof, embodied in the Domestic Relations Court Act of the City of New York (§ 92, subds. [1], [2], [3], [4]; § 101, subd. 1).

It was stipulated that respondent's current gross earnings are $67.50 a week and that his take-home pay is $60.82 after

deduction of social security and withholding taxes. Respondent queried whether the withholding tax might not be materially increased in the light of the marital status adjudicated by the April 2, 1946, Supreme Court separation action judgment. But respondent will still be entitled to claim two withholding exemptions, one for himself and one for "Harold" as a dependent who receives more than half his support from respondent, i.e., out of a weekly salary of $67.50, the amount withheld will be $7.80, which is an excess of only $1.80 over the stipulated present deduction of $6 a week. Moreover, for 1946 and later years the credit for dependents applies to the surtax as well as normal tax, and not, as in former years, to the surtax only (see 1 C. C. H., Tax Service, pp. 2527–2533). So, allowing also for New York State income tax, the assumed basis of today's order will be a round figure net income of $57 a week.

No useful purpose would be served by a detailed narrative of the evidence as to respondent's claimed personal expenses and other obligations. Suffice it to state that each item has been carefully weighed, including the cost of insurance for the child's benefit, expenditures for his entertainment, and the indebtedness incurred for the counsel fees and disbursements of the groundless separation action.

For the foregoing reasons the court finds that respondent is chargeable with support as alleged in the petition, in respect of the child according to his means but in respect of the wife only on a "public charge" basis, and that at this time the wife is not a "public charge" nor likely to become one. Respondent is therefore hereby ordered and directed to pay into this court the sum of $19 weekly, each and every week, beginning on June 10, 1946, for the support of the child named in the petition, until further order of this court.

That $19 sum covers ordinary and incidental medical expenses, such as those shown upon the April 13, 1946, hearing, without prejudice, however, to an application for an additional order under subdivision (2) of section 92 of the Domestic Relations Court Act, in the future event of substantial medical, surgical or dental needs.

No temporary order was entered, subject to the court's discretionary power to make today's order retroactive to the date of the initial hearing (see *Schacht* v. *Schacht,* 187 Misc. 461, *supra;* cf. *McCarthy* v. *McCarthy,* 143 N. Y. 235), and upon the understanding that respondent would pay to petitioner direct at least $15 a week pending today's decision. However, upon the assumption and representation that respondent's direct pay-

ments between April 13 and June 8, 1946, will have aggregated at least $105, and to help defray respondent's afore-mentioned legal expenses, the first due date for the final order $19 weekly sum is hereby fixed as June 10, 1946.

Respondent's informal request by May 16, 1946, letter that today's disposition include specific directions as to visitation is hereby denied, without prejudice. No question of custody is, or could be, raised in this Family Court proceeding (*Matter of Berman* v. *Berman,* 169 Misc. 921); nor may there be invoked the jurisdiction of the Children's Court except on proof that " Harold " is a " neglected child " within the meaning and scope of subdivision 17 of section 17 of the Domestic Relations Court Act (see *Schwartz* v. *Schwartz,* 35 N. Y. S. 2d 930). Questions of legal custody of the minor child of spouses living in a state of separation without being divorced are determinable solely in the Supreme Court (Domestic Relations Law, § 70). Provisions for limited custody and visitation of a child embraced in a Family Court support order are permissible, but only as part of an " order of protection " within the framework of the enumerated powers conferred by subdivisions (7) and (8) of section 92 of the Domestic Relations Court Act (see *" Horner "* v. *" Horner ",* 184 Misc. 989, affd. *sub nom. Matter of Hartstein* v. *Hartstein,* 269 App. Div. 770). And I am not persuaded that the situation yet calls for such drastic remedy.

It is a self-evident commonplace that a broken home usually has adverse effects upon young children and that such harm is aggravated by attempts of the parents to use them as pawns in the marital conflict. It is therefore earnestly urged that the parties minimize the danger to " Harold " by petitioner's vouchsafing to respondent full and free opportunity to develop the child's affection and respect, and that they make reasonable voluntary arrangements as to the times, places and other details of visitation. It is my impression that both parties have a deep affection for " Harold " and, being intelligent, may be persuaded by this exhortation. If, nevertheless, they fail to agree upon and carry out a mutually satisfactory visitation plan, upon request of either party any controversy concerning visitation may be scheduled for hearing before the justice then presiding at the Bronx County Family Court.

Notice of today's decision and order shall be given to the parties pursuant to the subjoined direction.